Ms. Gordon for the appellate, Mr. Peters for the appellate. Ms. Gordon, good morning. Good morning, Your Honors. And may it please the Court. This prosecution was fundamentally flawed from its inception. The government's legal theories ignored the plain meaning of statutes and the established precedence of this Court. The District Court erred by permitting those theories to be put to the jury and by not reversing them after the fact. This case is the first ever brought by the Department of Justice Public Integrity Section for proceedings before the Office of Congressional Ethics in the House of Representatives. And the Public Integrity Section let its zeal overcome its judgment in this case. And as is usually the case when that happens, this results in a lot of errors. The case, the counts in this case that present the most clear example of what those errors are for the defense are counts four and seven. These are the false statements case counts in which the government alleged that Mr. Bowser made false statements in representations to the OCE investigators. The District Court found that these counts were justiciable, but they are not under this Court's precedent in Rostenkowski. In addition, those counts are... Let me ask you about that. As I understand it, what the jury was deciding was that Mr. Bowser's statements were false. Right. What do the House rules have to do with whether his statements are false or not? This doesn't require us to interpret some ambiguous House rule. The claim is that he lied when he was asked why he hired Mr. O'Donnell. I don't... Help me understand the connection. I'd be happy to. Thank you. So every false statements case requires the statement to be interpreted in the context of that case. So, for example, in a false claims case for a defense contractor, the statement is either true or false depending upon the context of the question. And the question here is, did you hire him to work on the campaign? What were the reasons why you hired him initially? And you said not for the campaign. Mr. Bowser's answers were that they hired him for official work. So in order for him to answer that question... It was more than that. He said, we didn't hire him for the campaign. That's correct. Was that statement true or false? That statement was true. But you didn't hire him for the campaign. Correct. They did not hire him for the campaign. The jury found otherwise, right? The jury split on that, I think. They found that two of the statements were false and two of the statements were true. Our position is that the evidence is insufficient. Switching to that, but then coming back to Rostenkowski. That's a different question than the justiciability question. Right. And I don't understand your justiciability argument. I guess what I'm saying is I don't understand your justiciability argument. I would understand it if it required the jury to interpret an ambiguous rule. You're right on that. But I don't understand the ambiguity here. I don't think the district court understood the application of Rostenkowski either, which is why he came to the same conclusion. So the principle of Rostenkowski is not that the Department of Justice cannot prosecute members of Congress for violations of 641. It's not a theft defense. The principle of Rostenkowski is that the government cannot prosecute criminally members of Congress or their staff when there's a requirement that the rules of the house be interpreted to fulfill the government's theory of prosecution, criminal prosecution. Here, the government's theory was that Mr. Bowser's statements were false. But in order to understand Mr. Bowser's answers, you have to interpret the rules of the house. Because that's what Mr. Bowser was doing. He was being asked by OCE. Doesn't Rostenkowski tell us, you tell me, that it's not that simple? It's only when the house rule is ambiguous and we step outside our lane when we interpret it. Not when it's clear. That's the government's position is that the rule is clear, and it's my position that it absolutely is not. Because the primary purpose test is what was influencing Mr. Bowser's answers. So the stipulation that the defense and the government entered into said that everyone agreed the MRA funds could not be used for campaign purposes. However, the house rules also say that the member of Congress and his staff have to decide what the primary purpose of the expenditure of funds is. And preparing for a debate? Is there any question about that? If that were the only purpose... Because it wasn't the evidence that within two hours of him being introduced to the staff, he was told, go help the congressman get ready for a debate. He was asked to help the congressman prepare for a debate. It's our position that Mr. O'Donnell volunteered all of those services. He was hired for, everyone knew going into it, what he was being paid for out of the MRA at his official rate, not his campaign rate. Let me give you a hypothetical. Let's imagine he had been told, as part of your responsibility, you have to go help him prepare for the debate. There's no question that preparing for the debate is a campaign function, right? Correct. But you're saying that's not what happened? That's not what happened. If he had been being paid only for campaign work, then I would have agreed that that was a violation that would have not fit within Rosinkowski, and we wouldn't have gone to trial, very likely. We would have pled. But that's not what happened, because what happened here is... You seem to be taking the position that if he's doing any official work at all, there can't really be a prosecution, even if the employee testifies that it was their understanding that they had no choice but to do campaign work in addition to official work. Is that your position? Yes and no. The principle of Rosinkowski holds there, but here the employee didn't testify that he was... I'm asking for your legal position. So if the employee is directed to do campaign work and they're being paid out of the MRA to do that work, that would indeed be a violation. If the employee is volunteering the campaign services in addition to being paid to do the official work, then that's not a violation. Isn't that the question of fact that the jury had to decide here? Yes and no. So for purposes of sufficiency, there's not enough evidence to conclude that that's what happened. The only evidence that the government really had is the email that's been alluded to here, that Mr. O'Donnell was asked, not told, but asked after he had volunteered to do campaign work in addition to the official work that he was being paid for, that he did some campaign help on two debates. The way the facts shook out, it was clear, and the jury found this, that the congressman did not need debate help after the other former congressman, Mr. Collins, had dropped out of the race. So prior to that, they were looking for help on both sides. After Mr. Collins dropped out of the race, there's no question that they were not looking for debate help. Mr. Allen, the other person who had interviewed for the job, testified that the tenor of the meetings changed after Mr. Collins dropped out of the race. The timeline also shows that. There were the two debates with the primary opponent that the congressman was going to trounce in the primary election. He did trounce that opponent, according to the election results. There was no opponent in the general election in November. So there was no question but that the congressman didn't need debate help, which the jury found. They acquitted Mr. Bowser on that count. There was also no Senate race in the offing because Senator Chambliss had not announced that he was retiring yet. So the whole thing lines up that this work was the work that was paid for out of the MRA was official work. Mr. O'Donnell. But this is the question, what was the intention in hiring him, right? What was the intention? And you have to look at Mr. Bowser's statement of what was the intention at the time, but based on the information that he knew, which is not what the district court did. If you read his opinion, he is looking at both what happened going into the hiring and after. Well, after can help you understand what the intention was. If you hire someone and two hours later you tell them, we'd like you to help with the debate, that casts some light on the intention, but maybe not. Not enough is my argument. It is a single fact that leans in that direction. All of the other evidence leans in the other direction. Well, I'm sure we'll hear from Garvin, that's not the only fact here, right? It's the only contemporaneous fact. All of the things that happened after 2013 certainly can't relate back. It's unreasonable to say that Mr. Bowser in May and June of 2012. I thought there was someone else interviewed for this position beforehand who testified that the intention in hiring him was to help with the campaign. He thought so initially, and then when I cross-examined him and pointed out that yes, but all the materials you were given for the meeting were official, he conceded that point. He also said that in going into the second meeting, the tenor had changed and that he understood going into the second meeting that it was only for official work. Mr. O'Donnell also testified that leaving the second meeting where he knew he was being hired, that he understood that the work was only for official. It's a post-hoc rationalization by both Mr. O'Donnell and the government to say, well, it was actually for campaign work. That doesn't comport with the facts. Before you sit down, Ms. Gordon, let me ask you about count two. That was the one that the jury mistried and there was a dismissal with prejudice and you're claiming that he should have given a judgment of acquittal. Why is that not moot? It's not moot because, you mean the argument here today? Obviously, there's still a controversy. No, he's been, the charge has been dismissed with prejudice. Because he was entitled to an adjudication on the merits under Rule 48. Under Rule 48A, the defendant cannot agree. But that's tied to when it's done. If it's in the trial, he's got to give his consent and so forth. I'm having trouble seeing why this isn't moot. The charge has been dismissed with prejudice. He can't be charged again with it. I mean, you've said something about clearing his name. Yes, but actually there is a precedent of this court that was vacated on other grounds saying that the government's dismissal with prejudice is not a bar to double jeopardy, to a second prosecution. What's that case? It is... That would be news to me. Well, we found it when we did the research. Let me find it. It is... It's in a footnote of our brief. Well, why don't you look and we'll give you a couple of minutes to reply. It's on page 46. It's U.S. v. Lindsay. 47F 3rd 440, D.C. Circuit, 1995. Now, as I said, it was vacated on other grounds, but there's no precedent in this circuit saying that there is a double jeopardy bar there and this precedent would seem to indicate that there's still a problem there. Okay. We'll give you a couple of minutes and reply. Thank you. Mr. Pierce? May it please the Court, good morning. James Pierce, United States. When asked about Brett O'Donnell's political activities, defendant David Bowser lied to and withheld documents from the Office of Congressional Ethics. The jury found that that conduct... convicted him for that conduct and those convictions should be upheld.  the jury found that count two, charging obstruction, and count three, that jury verdict should be reinstated. I'd like to focus on count one, but let me first address the arguments that my friend on the other side raised. Judge Griffith, I think, hit the nail on the head. This is in a 1001 prosecution. The court question was, was the statements that the defendant made, were they false or not? And in fact, to be clear, the statements were not just at the time of hiring. In fact, the statement on count four was, at no point did we ever entertain the idea that this would be a political adventure. That's not just at the time of hiring. That's from the time of hiring in 2012 all the way up until his termination in 2014. Can you explain why the jury acquitted on two of the false statement charges and convicted on three? They all seem to be pretty much the same to me. What's going on? So, again, speculating about a jury verdict is always a bit of a black box, but I think there are four counts where there's a bit of a question. The count eight was just the certification on the form itself. That, I think, we can sort of put aside. I think one way to look at it is actually the point that I just made, which is counts four and seven basically were, at any point during O'Donnell's period, we never considered that we would need him for anything political. Whereas in counts five and six, there was a statement, we don't need debate preparation, that's count six, and we went into the relationship purely looking for nothing but official help. So the jury might have actually thought, well, you know, we're not so sure around the time of his hiring whether there was consideration of the political side. Now, I think the evidence that you pointed to earlier, the email within two hours of his hiring, certainly suggests otherwise, as does the fact... What do you do with your friend's explanation that that's asking him to volunteer? Well, that's certainly the argument that was made to the jury, and one that is a factual question that the jury rejected. And, of course, that's now a sufficiency question. We're far afield from the Rostenkowski question. But a sufficiency question, the facts, inferences, are all drawn in the light most favorable to the jury verdicts on four and seven. I think that's enough to get us past the post. Back to the Rostenkowski question, this is simply a, was that statement true or false? There's no need to interpret a House rule. And in any event, Rostenkowski asks this question about whether the rule is ambiguous or not. The defendants and the government's stipulation as to the content of the rule forecloses a question as to its ambiguity. Rostenkowski is, in essence, a pretrial challenge to the indictment, a justiciability challenge, saying we're not really sure whether the allegations in the indictment are sufficiently clear. Here, there was no challenge to the indictment. This happened after we had not only stipulations at trial, but a whole universe of evidence that came in that can show clearly what the rule was, the use of MRA funds are for official work, not political campaign work. Putting aside the justiciability issue, isn't it, it seems a bit concerning here to base a prosecution on someone to the extent to which they volunteered campaign services when it's pretty much common knowledge that all campaign, that all official staff, maybe all is too strong, but that probably the vast majority of official staff out there volunteer for their principals' campaigns in some capacity. Why shouldn't we be concerned about some line drawing in this case? Not only because the rule was clear and stipulated as such, but I think there was some trial testimony to suggest that yes, there's a lot of volunteering happening from official staff, but the individuals, the witnesses that testified to that were people that were in the congressman's office. So this is the scheduler who says, yeah, in my off time. Tom Davis testified to that. Tom Davis. A respected former congressman. Certainly, and testified that it happened, but we're talking about a different type of employee. So Brett O'Donnell is the kind of person who will work for various different campaigns and come in and essentially give political campaign type of help. Jason Miller, who was a communications person, came and said, he's not somebody who's in the official staff who basically has this sort of compelled requirement to volunteer. These are consultants that come in specifically for campaign work. Maybe it's a different question when we're talking about somebody who is an official in the staff, on the staff, and then there's this other line drawing question about are they really doing volunteer work or not. That wasn't the case here. And O'Donnell said quite clearly he wasn't volunteering. And every other witness, with the exception of Bowser, said as such. And again, on a sufficiency review, that's all construed in the light most favorable to the jury's verdict. I wonder, what is the source of the duty to disclose to the OCE here? So, the source in this particular case. I think it comes from the April, and then again the June 2014 letters that the OCE... So the OCE can create a duty to disclose just by a letter or a form? That's troubling. Well, I don't think it's troubling in the case of a duly authorized investigation. So an OCE investigation doesn't just happen out of the blue. And this sort of cycles into the question on count one. It takes two OCE board members signing off on it, and then a preliminary review. And so it's not just as something that's out of the blue. In fact, in many ways, it's no different from any investigative agency getting underway and starting early off in its investigation shooting out maybe a grand jury subpoena. And the OCE letter both to the congressional office... Well, you have to be careful here with your argument, don't you? If you make this too much of an investigation that trenches upon the House Ethics Committee argument, aren't you then... Well, I guess that is your argument. That it's acting as an agent of the House here. I'm sorry. That's one piece of argument that it's acting as an agent of the House. In another... And I don't want to bounce onto the count one argument without fully answering the coordinates to count two. I think that the second part of the answer is that's also a factual question. I agree that in some cases the duty to disclose whether some government agent just sort of slaps something down and says, this creates it. But this went to the jury. And the jury could struggle in some cases and say, I don't think this is adequate to create such a duty. Here, they have the full factual record in front of it. The testimony from the OCD Investigative Council. That's an important designation, by the way. Investigative Council. As well as the forms and the evidence there. Now, if I could get to count one. The district court thought that that question was is the OCD the House? And I think there's a passing argument there. But I acknowledge that that's not our strongest argument. The language in Section 1505 is broad. That it prohibits obstructing the due and proper exercise of the power of inquiry under which any investigation or inquiry is being had by the House, any committee of the House, or a joint committee of the House. Yeah, don't garble that language. That's the key language, right? By who? And it's not an office of the House. It's very careful to say that. By the House or committee. This is not a House. This is not the committee. This is an office. This is true. But what it is is an investigation or inquiry that the House is having. It is by the House. It's not even done on behalf of the House. I think there, again, would be a harder argument for us. A colleague of mine in the future may be okay. What's the relationship between the work that's done by the OCE and the House Ethics Committee? So the OCE was created in 2008 largely. Just to recommend. It makes recommendations. It does make recommendations. But the question is what did the House create the OCE to do? If they were doing it on behalf of the House Ethics Committee, why would the House Ethics Committee have to conduct its own investigation? Which it does, right? It must do that. It does create... It does do an investigation itself, but so does the OCE, right? The OCE was created... The question is whether the OCE is doing it on behalf of the House Ethics Committee. That's the argument you have to make, right? No, I actually don't think so. I think the argument that I am making is that when the House, under House resolution, created in the House the OCE, it did so as part of an investigation or inquiry into House ethics matters. And therefore, any time that there is a properly, duly initiated ethics inquiry by the OCE, which has a specific... Has to have the two OCE board members kick it off. That gets it to the preliminary review. Then there's a potential second phase review. Any time that that occurs, that is a due and proper exercise of the power of inquiry into this larger inquiry or investigation that is being had by the House. In other words, the OCE is... The House is having the OCE investigate on its behalf. And that comes purely from the House resolution 895 and then the accompanying task force report. And I would comment on that task force report, which both sides cite in the brief. At pages 10 and 12, the task force report refers to the OCE as engaging in an inquiry. And on page 17, it says what the OCE is doing is an investigation. So there is this sense that yes, although ultimately the OCE doesn't have the power to enter sanctions or to find whether there's a violation or not. Can I just continue with this answer? Go ahead. And that ultimately it is referring it on to the House Ethics Committee. That it itself is engaged in investigation, which is what the language of 1505 says. And an interpretation of that would be consistent with the broad purpose of 1505. I've got two questions on 1505. Why wouldn't we apply the inclusion of one as the exclusion of all others? If it had just said, had by the House, then you could argue, well, or any part thereof, office, committee, subcommittee, but it said the House or a committee or subcommittee leaving off an office or something that wasn't one of those two. And my second question, well, go ahead and answer that first one. Certainly, Your Honor. So I think when Congress, that's language from 1962, that particular portion. I think when Congress drafted that language, it was trying to be as broad as possible to capture House and committee and then not subcommittee necessarily, although the Fifth Circuit in Rainey found that subcommittee and this Court in Berenblatt found the same. I think that what that tells the Court is that actually Congress is trying to be as broad and sweeping as possible. The Office of Congressional Ethics, of course, didn't exist at that point, but was trying to be as inclusive as possible. The question I thought you might be asking is, well, what about in 1996 when Congress redrafts 1001c2 and puts among its terms offices? It is certainly the case. I don't want to answer a question you didn't ask. That is my second question. So it's certainly the case that Congress could, with 1505, go back and draft a more comprehensive, broader statement, but I don't think that is required under the language that 1505 already has. The 1996 change was to address the Supreme Court's decision in Hubbard that a false statement against the legislative branch doesn't create criminal liability. 1001c2, as we put in our brief, was the product of a careful negotiation between the House and the Senate, and so it was not the part of the prohibition within 1001a1. It was part of cutting back and specifying sort of the reach of 1001 in c2. Well, it seems to be, and this is the other part of my second question, that in creating this office, they thought, how do we give it teeth? We give it teeth by tying it to the False Statement Act and that violation. They decide, we don't know that, but they don't specifically say anything about 1505. That's true, but I think the function of 1001, to give it teeth, is to make sure that anyone who is the subject of an OCE investigation knows that this is something that has real bite, that it is an agency acting on behalf of Congress. It would be particularly odd, in fact, I'm not aware of any certification form that says failure to comply or to be fully disclosing is also a violation of, frankly, anything other than 1001. It's typically always that, and I don't think by doing that it's a, and you are therefore only subject to liability under 1001. What's the difference? If you just have 1001, why do you need 1505? Well, I mean, I think there is overlap. I mean, certainly count three, the concealment of a material fact had some overlapping allegations. Frankly, an obstruction statute carries more weight. I think that there is greater punishment that attaches to it. But Congress has indicated that it feels that obstructive conduct is worthy of that kind of punishment for... So why isn't this Rostenkowski? In Rostenkowski we had to decide, the question was whether personal services or official work. Why isn't there the same vagueness between official work and campaign work here? So just so I'm clear off the bat, the only place that comes up are count two and counts four and seven. Count two we think because of the dismissal of prejudice, there's no Rostenkowski question, and I think it doesn't need to be answered with four and seven. But that aside... I want to understand it better. Just for my education. Sure. So Rostenkowski really, I think the relevant question focused on count eight there, which is, as Your Honor says, is this question about personal versus official. And looking just at the indictments or only at the allegations as opposed to a universe of trial evidence, what the court said is, we're not really sure whether these particular allegations could or couldn't be official work. So the three examples that the Rostenkowski court gave was engraving plaques, that could be for the official office, that could be for personal, picking up the congressman's family, again, that could have to do with some sort of an official duty, or then a set of employees where there were allegations that said they do little or no work in the official office. And so there was this question of, are they doing or are they not doing official work? We can't tell. The rule is too ambiguous. It's not justiciable. Here, it's not, was he doing official or was he doing political? Everybody concedes he was doing some amount of official work. The question was, was he also doing political work? And as long as he is doing political work, funded by the MRA, the members' representational allowance, he has violated the house rule. But doesn't the government's case turn on whether when he was hired, the intention was to have him do political work? No. Why not? Well, because that's not what was alleged in the indictment. And arguably the jury had some problem with that in its acquittals on counts five and six. It was, in the time that he was working, was he doing political work funded by the MRA? Whether he went into it or not. So I guess my question was, it's just limited to false statements charges. Is that right? For the Rostenkowski issue? No. The question right now about the intention at the time of hiring. I think that's right. And again, it's interpreted by the language of what is in those false statements. And when the defendant says, at no point did we ever consider O'Donnell to be doing anything other than official work, that's got to refer, just on the plain language of what he has said, to more than at the time of the hiring. All right. Thank you very much. Ms. Gordon, do you have any time? All right. Why don't you take two minutes, but before you start, you need to reread Lindsay. Because Lindsay said that a dismissal with or without prejudice is before trial. This was after trial, after there had been a determination on the facts. So that's not... Right. So my argument on Lindsay was that it leaves open the possibility, depending upon how we want to apply it in this context, that there's still a double jeopardy problem for Mr. Bowser. I think the principal reason why count two is not moot is because although Rule 29 allows the district court to reserve its ruling, it doesn't allow the district court not to rule at all, which is what happened here. But the problem with your argument is that your argument isn't one that entitles you to acquittal. Your legal argument is an argument based on Rostenkowski that would have entitled you, if successful, to dismissal, and dismissal is what you got. No, it would have entitled me to an acquittal at trial because the government... No, your legal argument about justiciability wouldn't have entitled you to acquittal. It would have been an argument to the court to dismiss the count. Rostenkowski wasn't a case about whether there should have been an acquittal. What was it about whether the indictment should have been dismissed? Only in the pretrial context. Once the trial begins and jeopardy attaches, the government cannot prove the allegations that it made in that count because there's no legal way to do so. I guess we'll have to agree to disagree, but you can move to dismiss a count after jeopardy attaches. It doesn't magically become an argument for acquittal. But I didn't move to dismiss it. I moved for judgment of acquittal because the government can't make out the elements because that's not a cognizable criminal offense. It may have been what you called it, but that's not what it answers to. In terms of the government's issues about the questions that Mr. Bowser was asked, I would invite the court to look at the joint appendix, pages 138 to 143. You can see the statements that Mr. Bowser was making and the context in which they were made. My friend here points out that one of the statements says at no point did we ever, but counsel added the language during the period. If you look at the context of what Mr. Bowser is being asked and what he's answering, he's not answering that question and he's not being asked that question by the OCE. They are asking him, why did you hire this guy in the first place? Mr. Bowser is not answering about what happened afterward. He's answering about looking forward in May and June of 2012, why did we hire him in the first place? So him saying at no point means at no point at that period of time, at the time that we did those actions, made the hiring decision, did we have the intention to use him for campaign work. That was true at the time that he said it. Counsel suggested that the jury had rejected that Mr. O'Donnell had volunteered, but that's not true. They hung on the count, which hung on the question of whether or not Mr. O'Donnell was volunteering or not. They were split on that question, which is count two. On the duty to disclose, the government's argument appears to be that if the investigators really want to know the information bad enough, that imposes a duty on you to disclose it, but that is not what the law is. This court has already said in Safavian in footnote 12, that you can't bootstrap a duty to tell the truth or a duty to be truthful on a certification into a duty to disclose. But Safavian also said, I think, in footnote 7, that a form, a government form, can give rise to a legal duty. It can, if the form actually requires the disclosure of information. Here, the certifications do no more than say what the law already is, that 1001 applies to the interview. So just so that I'm clear, you don't dispute that the form can create the legal duty. Your argument is that this particular form does not. Correct. In theory, a form could. Doesn't 1001 create a duty? After 1001, doesn't everyone have a duty that when you're part of a government investigation, you have to tell the truth? To tell the truth, but not to disclose information. Your choices are say nothing, tell the truth. Well, in this case, he was asked to disclose emails that he had sent to Mr. O'Donnell, and he didn't do that, right? He was asked, because the OCE doesn't have the power to compel. He had no duty to provide the documents. None at all. He could have simply provided none. Now, the OCE wouldn't have been happy with that, but that wouldn't have been a violation of 1001A2. There's a difference between a duty to tell the truth and a duty to provide the information, a duty which this Court made very clear. Didn't he certify that he had answered, that he had complied with the request? He did, and that is what Count 8 is for. Perhaps that's a violation of the duty to tell the truth under A1, but it is not and cannot be a violation of the duty to disclose under A2, because he has no such duty. He didn't have to give the documents. Simply saying that you did, when in fact you didn't, is maybe a false statement, but it's not concealment because there's no duty to disclose. There is absolutely no basis for that here. 1001 doesn't create the duty to disclose. It punishes your failure to disclose if you have a duty, which is generated by some other form or statute or regulation. There was no such requirement here. All right. Time is up. Thank you. Call the next case.
judges: Henderson, Griffith, Wilkins